Tardif v. City of New York. I would ordinarily dispense with calling the calendar in such circumstances, but just to make sure we're all here. Judge Parker, you were on the line? Yes. And Judge Bianco? Yes, I'm here. And counsel for the appellant, Mr. Krieger? Yes, I'm here. And counsel for the appellee, Mr. Popolo? Yes, Your Honor, I'm here. Sorry, I expect I mispronounced your name, so you'll just... No, you got it right. We also have a number of submitted cases this morning. Mariano v. CVI Investments, Uwe Barr, United States v. Denault Reynolds, United States v. Bryant, and Ninh Nieng v. New York City Fire Department. And we'll take all those cases on submission. But it looks like we have a very good case. And as counsel knows, we've set up a procedure where you will begin with three minutes of uninterrupted time. So I believe we're ready to proceed. Counsel for appellant. Thank you very much, Your Honor. Good morning. May it please the court, I am Stephen Krieger from the Hostel Law Clinic on behalf of Plaintiff Mary Tardif. I am here today with my co-counsel, Gideon Orion Oliver. I will be arguing points one, two, and three in our brief. If you have any questions about point four, I'd be glad to address them. In regards to point one, Ms. Tardif's reasonable accommodation ADA claim, there's only one issue, whether there is a genuine issue of material fact that the NYPD denied Ms. Tardif a safe custodial environment when they failed to accommodate her epilepsy by ignoring her repeated requests for necessary medication. Viewing the evidence in the record in the light most favorable to Ms. Tardif, Ms. Tardif repeatedly requested her requested warning dosage of medication for her epilepsy in the precinct repeatedly. The NYPD ignored that request. And she experienced a seizure in her cell. Defendants have failed to offer any explanation whatsoever to the denial of her medication. The service to which Ms. Tardif was entitled under the ADA was a safe custodial environment where her health was not compromised. A service indisputably afforded to all detainees, whether disabled or not. The reasonable accommodation to which Ms. Tardif was entitled under the ADA was her requested warning dosage of medication for her epilepsy. Contrary to defendants' assertions, this is not a case where we're challenging medical treatment, a malpractice case in the guise of an ADA claim. It's a straightforward case of unexplained denial of treatment. As the First Circuit held in the Kimen case, such an unexplained denial of medical treatment to a disabled person in custody, unlike a claim for inadequacy of medical care, constitutes discrimination by reason of disability. And as this court held in Adriana v. Bloomberg, an ADA reasonable accommodation claim can be established with evidence that the plaintiff's inability to obtain services was so related to her disabilities as to be a reason of them. Here Ms. Tardif presented evidence demonstrating a material issue of fact where the plaintiff's inability to obtain the services of a safe custodial environment was directly related to her epilepsy. Plaintiff has presented evidence that this inability, it wasn't due to some reasoned medical judgment, but it was due to the unexplained failure of the medication. For that reason, a trial... Excuse me. Yes, you have one more minute. Thank you. For that reason, a trial was required for a jury to determine whether the NYPD denied Ms. Tardif a safe custodial environment by reason of her epilepsy when it did not accommodate her environment, but she also suffered physical injuries caused by the assaults and batteries of Matera and McManus, which took place in a non-arrest context. Defendants completely ignore the plain language of New York penal law 3530 sub 1. Applicable to New York... They also ignore applicable New York case law. They ignore the New York pattern jury instructions, which only allow police to raise a justification defense to the use of objectively reasonable force in lawful arrest situations and other emergency contexts not applicable to this case. I think the three minutes is up, so I wanted to see if any of the other panelists had questions at this juncture. Judge Parker? Yeah, I still... I'm sorry. I heard your comments, but your client has been taken into custody by the NYPD, and I don't understand how you considered a number of our past opinions about whether you are essentially complaining about inadequate medical care, which doesn't raise an ADA claim. It raises an Eighth Amendment claim. Judge, the difference is that we are not challenging the substance of the care that in the other cases, for example... I don't get that. It seems to me you are. You're saying that she should have gotten some... She was entitled to more different medical treatment than she actually got. Judge was saying she got no treatment at the 20th precinct. As the magistrate recommended in his report and recommendations, that there is a dispute of fact whether or not at the 20th precinct, she got any care at all, because she was denied care. That's the difference that the Kyman case makes. It's a difference that the Gorman v. Easley case of the Eighth Circuit makes. There's a difference between questioning the kind of care, the substance of care, and whether or not there's been a denial of care. As to the battery claim... Suppose in the course of affecting this arrest, your client had broken her arm or had an injury that may have been a broken arm or the arresting officers didn't appreciate or didn't respond to her complaints of pain and whatnot. Why is that not just a straight-up denial of medical care claim? Your Honor, that is, but there are two differences. One is that in that case, we are not dealing with a disabled person who has protections under the ADA. Secondly, it's a situation unlike ours in which there is not a total denial of the services. This is a case that was decided on a motion to summary judgment. It's for the jury to determine whether or not those requests were made by Ms. Tardif, whether or not the city has any reason why it was denied. The ADA protects disabled persons from the denial of medical care. It does not permit the courts to be second-guessing the kind of medical care that is given. That's the distinction that Kimon makes. It's a distinction that Gorman v. Easley makes. As to the battery claim, the plain language of New York Penal Law 35.30 sub 1 specifically only allows justification defense when in a situation where there's a lawful arrest. I don't want to intrude on my colleague's time, so that was all the questions I had for right now. Judge Bianco? Yes, thank you, Judge Levinson. I wanted to focus on the battery claim, but I just want to ask you one question first on the ADA claim, Mr. Krieger. Just following up on Judge Parker, I'm not sure I understand this distinction that you're making. If reasonable accommodation includes medical services or treatment, I'm not sure why there would be a distinction between a denial of care and inadequate care. But putting that aside, even under your approach, every alleged denial of care, for example, in a prison, if an inmate doesn't get medication on one day, then what would happen under your approach would be the whole framework for deliberate indifference claim under Section 1983, and all the standards for that would be completely replaced by the ADA in that situation. Wouldn't it be every single denial of medication of an x-ray would all now come under the ADA under your approach? Correct? Your Honor, I certainly understand the issue that you raised, but I made the distinction. The distinction is there are circumstances in which the prison has explanation. The explanation could be here that they were trying to get the medication and they didn't get the medication. They couldn't get it quickly enough. The explanation could be that a doctor decided she shouldn't get the medication. That's the kind of issue that is not covered by ADA. You keep focusing on Kimen, which is I think the only case out there that would arguably support your position, but that was no medication for a long period of time. It wasn't one day. The theory there was that you're denying this person treatment for so long that they can't even use the services of the jail, theoretically, I guess. But it wasn't a one day denial of what we're dealing here with pre-trial detainees. I don't see how, at least in terms of the causation requirement under the ADA, how there's a distinction between multiple times over a period of time as in Kimen and here where she made repeated requests. It's not like she made one request, but she made repeated requests saying, I need this medication or I'm going to have a surgery. Go ahead. I'm sorry, your honor. I understand. No, that's okay. I wanted to just spend a little bit of time on the battery claim. It seems to me your position is in a non-arrest situation, a police officer can never use force without being liable for a battery. Isn't that your position? My position is that force can be used, for example, in a crowd control situation without it being a battery. I thought you were suggesting that reasonableness is not the standard for a crowd control situation, that in a crowd control situation, the police officer has no authority to use force. Wasn't that what you were arguing in your brief? What I'm arguing is that in terms of the justification defense, that is not available in a non-arrest situation. However, one of the elements of battery is an offensive contact. There is a judgment of reasonableness, but that's reasonableness from the standpoint of the victim. In other words, in a crowd control situation, if a reasonable victim would consider that the minimal force used to be able to control the crowd is not offensive, it would not be a battery. Actually, the restatement of tort has... I don't know where you're getting that. I don't understand where you're getting that standard from. We always judge an officer's use of force from objective reasonableness from the standpoint of the officer, right? I'm getting it from the New York common law battery. One of the elements of battery under New York common law is offensive contact. Offensive contact is defined by the PJI as one would offend the ordinary person not unduly sensitive as to its personal dignity. The PJI on the statement of tort second, which gives an illustration that's just, I think, very similar to what you're talking about, Judge. In that situation, the illustration they give is, A, while walking in a densely crowded street, deliberately, but not discourteously, pushes against B to pass him. This is not offensive touching of B. Similarly here, you look at the reasonableness standards from the standpoint, this is New York law under battery, you look at from the reasonableness of an ordinary, objective person, whether or not using the social usages of the time... That ignores that officers have a public function, therefore have a privilege to use reasonable force in a whole variety of situations. But let me just ask you one other question, and then I'm going to pass it to Judge Livingston. On the issue of subject, the instruction, including the subjective element, my jury note came out. I understand your argument with respect to Sergeant Matera and how that was an issue with respect to his use of force. But with Sergeant McManus, even if that was an erroneous instruction, there was no issue. It was either that Sergeant McManus knocked your client off for crutches or didn't. There was no issue of like a justification or good faith justification for the force. So wouldn't it be harmless as to Sergeant McManus at a minimum? I don't believe so, Your Honor, because it's that they ask about the use of force in the performance of a law enforcement function, just related to Matera or also related to all the battery claims. For that reason, it's unclear from the record whether or not it was just focusing on Matera or it also included McManus. Well, the beginning of the note focused on Matera, but even assuming they were focused on McManus, my point is there was no issue of a justification or a good faith use of force with McManus. It was either that he knocked her off for crutches or didn't on purpose, right? No. Actually, what McManus gave in his testimony, he gave a rationale for what he did. It was an argument both by the defendants in this case that the reason that McManus did touch her was because he was trying to separate the crowd in order to be able to take an arrestee from Union Park. All right. All right. Thank you very much. Thank you. Just in follow-up to that question, because I have a similar question about the record. So you're saying that Officer McManus's position was that if he touched her, it was inadvertent in the exercise of crowd control, and that's enough to render this error not harmless. It wasn't a case where it either he touched her or he didn't touch her, and the jury was making that determination. Yeah. In the record, Your Honor, and I think you've suggested this, that McManus has no memory of what happened. Right. He said by looking at the photos, the exhibit photos, if he did touch her, it was all part of crowd control trying to take this prisoner out of, get the prisoner to a patrol wagon. And that's enough from your perspective to say that the mistake wasn't harmless because the jury might have concluded that he touched her, but it was inadvertent as he said it could have been if it happened. Right. Correct, Your Honor, because the judge in the supplemental instruction had said that they could take the subjective intent of the officer into account. Right. Right. Now, you point to a slew in your cases that hold that if an arrest is determined to be unlawful, any use of force in the context of that arrest constitutes a battery. But I share my colleague's concern that these cases are about unlawful arrests, and I don't see them as establishing the principle that force used outside the context of an arrest always constitutes an assault and battery or outside the narrow circumstances you've described this morning. That seems to me an extension of those cases. So are there newer cases that you can point to that clearly states that your position? The position that the justification defense is unavailable in the context of the arrest. Right. Let me give me a second, Your Honor. Because looking at your brief, it seems to me your argument is principally based on the statute itself, which is a penal statute. And that raised a question in my mind about whether you were overreading that statute. Okay. Wood versus Strong Memorial Hospital, which is 273 AD 2nd 929. A justification defense under 3530 not allowed when there's no arrest or other extenuating circumstances. Okay. Oh, I have two questions. One, I'm sorry, Judge Livingston. No, go ahead. Go ahead. Two questions. One, did you take a specific objection to the judge's response to the note? Yes, Your Honor. I can refer you to the record sites if you want. But we specifically there was a lengthy argument specifically on that note. And our position that the justification defense does not apply in a non-arrest situation. The other question I had was, under your approach, an issue of fact is created every time a person who is subject to a confrontation with the police says the police officers putting his or her hand on me was an act I found offensive and upsetting. Under your approach, that in every circumstance creates a jury question, does it not? The judge motion for summary, I know it does not. The judge would determine whether or not an objective victim in that situation would consider it offensive. So if the judge decided, for example, on a crowd control situation on the motion for summary judgment, that this was the kind of touching that was required and that an ordinary person would not, an ordinary protester would not consider that the offensive, it would not have to go to the jury. Your honors, if there are no other questions, for the reasons that I've put forward, the case should be remanded to the district court for a trial on the denial of medication, whether or not it was a decision based upon some other factors other than just a pure denial. And secondly, it should remand the case to the district court for a new trial of the claims on the assaults and batteries of Matera and McManus. Thank you very much. Thank you. You've reserved some rebuttal time. Yes, your honor. Thanks. Good morning, your honors. Good morning. May it please the court, Jonathan Popolo for apologies to briefly recap our main points. The district court properly granted summary judgment on Ms. Tardif's Americans with Disabilities Act claim. The key to that claim is denial of access to services, programs, or activities by reason of disability. In the context of medical services or treatment, that means that the disability has to be the reason why the plaintiff was unable to access the services, not the reason why she sought those services. This court has clearly held that section 504 of the Rehabilitation Act, which the court treats as functionally identical to an ADA Title II claim, does not create a cause of action based on a disability that is directly related to providing the various services at issue. And the case off of that is in our brief. And the fundamental flaw with Ms. Tardif's position is that she was not, even viewing the evidence in the light most favorable to her, denied medical treatment while in custody because of her disability. She was denied medical treatment for that condition, her epilepsy. Moving to the assault and battery claims, the district court properly charged the jury that in assessing Ms. Tardif's state law assault and battery claims, it could consider whether any use of force by officers was reasonable. Under New York law, a police officer's contends limited solely to the context of arrests, but it extends more broadly to encompass the performance of their duties, including as relevant here, crowd control, which it seems that Mr. Krieger is not conceding is that police are entitled to use force, reasonable force in crowd control. And there's no support in New York law. You have one more minute. Thank you. And that there's no support in New York law for plaintiff's contention that any force, and I'm quoting from their brief now, it says that pages 38 to 39, they say that any force used in a non-arrest context must give rise to a claim for assault and battery. I mean, that's simply not true. There's no case law that says that, no decisional case law from New York courts that says that. And a rule like that would make no sense. It would preclude frisks, custodial stops, custodial detentions, and a whole host of other activities that are part and parcel of an officer's law enforcement duties. And that was the, I've reached, I think, the end of my prepared time. If the court would like me to maybe respond to some of the issues that came up during appellant's argument. Well, can I ask, the appellate relies on the ADA claim on a key man. And in that case, a corrections officers didn't allow the plaintiff to access a form of treatment that he was authorized to receive. How do you distinguish that case? Well, I agree with Judge Bianco that it's a pretty fuzzy distinction between denial and adequacy. But if we're going to accept that, for the sake of argument, if we're going to accept that on the adequacy side of that divide, it is simply not true that the city didn't offer any explanation and didn't offer any treatment. And the city has protocols when someone's taken into custody. Somebody can't just pull out a hypodermic needle and inject themselves with medication. There's an issue, there's a few issues of fact here as to whether the medication was actually on her person or not. And for purposes of summary judgment, I guess we have to assume that it was, but- Is there any dispute, there's no dispute of fact, is there, that she was provided with medication at the hospital? Correct. And they mentioned the magistrate judge's report, and I'm reading directly from it now that the court, this is the magistrate judge, it says, the court finds that undisputed material facts establish that the city provided an accommodation for the plaintiff's medical needs by and it runs through, this is at the pages 41 to 42 of the special appendix, and it runs through six factors, which included completing a medical treatment form after learning of her epilepsy, taking her to Bellevue due to her condition and her need to be medically cleared, having her receive her medication at Bellevue on arrival at 121 AM on March 18th, transporting to her to and placing her in a specially designed police precinct withholding cells for female when she needed further medical attention, she was taken back to Bellevue and given her medication again. And there's no evidence that the medical, that non-disabled people are allowed or were allowed to self-medicate while in custody? Correct, Your Honor. But it's still difficult to draw the distinction. I mean, if we proceed on an ADA theory, as parts of your brief seem to say, well, there's no evidence of a reasonable accommodation claim, that's not part of the theory. So how is this different? How would you distinguish our decision in Wright where we said a prison had to individually evaluate an inmate's request for a motorized wheelchair, even though there was a mobility assistance program? Because... Go ahead. In Wright, it was about access to other services that had to be made available on the same terms as to non-disabled inmates. For example, if Mr. Wright didn't get these accommodations, he wouldn't be able to access the law library or even perhaps the infirmary or other services. It wasn't about not getting appropriate treatment for his disability, it was the extent to which they had to accommodate his disability so that he could access other services. And I think that goes back to the court's decisions in Cushing v. Moore in the University Hospital that are cited in our brief, where they draw a distinction. They say it can't be... I think the actual language is... In the University Hospital, the court observed that where medical treatment is an issue, it's typically the disability itself that gives rise to or at the disability of services. And it said that Section 504, which is congruent with Title II of the ADA, prohibits discrimination against a disabled individual only where the individual's disability is unrelated to unless improper to consideration of the services in question. So in Wright, you had a situation where because Wright had a disability, he wasn't able to access other services in the prison that were available to non-disabled and disabled prisoners alike. It wasn't a question of him receiving treatment for his disability. I don't want to use up all my colleagues' time, but before I pass you on, could you address that even if we accept your argument with regard to the assault and battery claim that force can be used outside that context? You acknowledge... I mean, outside the context of an arrest and then will be assessed under a reasonableness standard, you acknowledge there was an error in the instruction on subjective intent. So what is your basis for asserting that that error is harmless? Because viewed as it's supposed to be in the context of the entire charge, there's been no showing of prejudice. It's a little unclear. The law that basically says that, and we cited in our brief, it says the appellant has the burden of showing prejudice. The court has also articulated the standard as the court must be persuaded that it did not influence the jury's verdict. And I think in this case, you can be persuaded for several reasons. One, at least with this, as just Judge Bianco pointed out, at least with respect to McManus, it was a straight dichotomy, yes or no. He either used force or he didn't use force. And it's just simply incorrect that McManus indicated that, well, if I used it, I did it for this reason. I mean, he unequivocally denied that he made any contact at all with Tardif, let alone pushed her off her crutches. He testified, this is at page 825 in the appendix, that the first time he saw her was when she was on the ground. So there's no way that this listing of this particular factor could have influenced the jury's decision with respect to McManus. And looking at it more broadly, even with respect to Matera, where there was, by Matera's own testimony, a use of force, there was never any argument put forward that, OK, well, the use of force was OK here because it wasn't malicious or he subjectively believed it was OK. I mean, the argument from the attorneys and the way this was always couched and phrased was this was a reasonable use of force in crowd control. And their position was, no, this was completely unjustified. He ran out, lunged at her, grabbed her, and threw her to the ground. So there's no sort of real middle ground where this could have confused the jury, especially given that this was one of four optional factors that were offered for the jury's consideration. The jury was certainly not instructed that you must find the act of maliciously in order for there to be an assault or battery. And Judge Parker, did you have any additional questions? Oh, no, don't. Judge Bianco? Yes, thanks, Judge Livingston. I just want to focus on, again, on that issue of harmlessness as it relates to that charge. I guess I'm having a hard time understanding if you're saying look at the charge overall. But this note was asking about a situation, the use of force in a non-arrest situation that the judge had never instructed on, that there was a gap in the original instruction. So it wasn't as if there was an earlier instruction on this that was correct. There was no instruction on this. And on the issue of whether or not good faith was something that the jury could be focused on, Sergeant Matera testified that he believed that she was about to run into the officer. And that was the reason for the use of force. So couldn't a jury have concluded here that Sergeant Matera believed in good faith at the point it was about to run into the officer's back when he grabbed her? But that belief was unreasonable. But under the instruction, they would have found him not liable, even though we know that that's incorrect. And there was an argument. I know the focus wasn't on subjective intent. But in the summation, I saw there was a phrase where these officers are not monsters, they're not violent monsters. So the suggestion of why would they do this? So do you want to respond to that? Yes, Your Honor. First of all, there was a lot in the summation about, let's actually look at what happened. Let's look at the facts and circumstances, which is discussing the object of facts and circumstances. I'm sure you're correct in saying that there was a statement about them not being monsters. It's not coming to my mind right now. But I know in our brief, we certainly stressed and highlighted all the areas where they were pointing out that this is based on objective reasonableness. And even the factors that were given, the first factor that they were told to consider was the need for the application of force and the relationship between the need and the amount of force. And those are all correct factors. So I think when you look at the totality of the factors that they were told they could consider, and given the way that the arguments were framed to the jury, the addition of this subjective factor of one of four did not influence their verdict. But you don't think the jury could have concluded that he, in good faith, believed she was about to hit the officer in the back, either accidentally or on purpose, but that was unreasonable? Couldn't they have come to that conclusion just based upon his testimony? And that would be an that he was telling the truth and why he reached out and tried to push her away from the person that they were going to run into. But I don't think that they could conclude that this was objectively unreasonable, but he genuinely... All right. Thank you. I don't have any other questions, Judge Lipkinson. Could you briefly address the proposition that the penal law provides that this use of force, that there was no justification defense in this circumstance? If we just look at the statutory justification defense, why shouldn't we look to that in this context? Hello? Hello? Hello? Yeah, I think we may have lost him. Are you still there? I'm still here. This is Mr. Krieger. Is no longer. Maria? Mr. Popolo. Judge Lipkinson, I do see his number here, so maybe his phone is mute or something. I do see that he's still in the call. Mr. Popolo, I very much apologize for that. I was cut off. All right. I think we were wrapping up, but I had asked one final question. Could you just the argument that we should look to the penal law... This wasn't addressed in either brief, but your adversary relies on the statutory justification defense in the penal law as the crux of his argument on use of force outside the arrest context. I just wondered why that should inform this tort case or whether we were looking to the wrong place and needed to look back at your case law. I basically agree with that, that this is a justification defense available in a criminal prosecution, but that too further points to that. One, there's something in it that says it's exclusive. It says it's available in these circumstances. It doesn't say it's limited to those circumstances. There's actually a different section of Chapter 35, Section 35.05, which says justification generally, and it says... I'll address this momentarily. It says, otherwise limited by the assuming provisions of this article, conduct which would otherwise constitute an offense is justifiable and not criminal when such conduct among other things is performed by a public servant in a reasonable exercise that is official to these powers, duties, and functions. I found this case when I was preparing for the argument. This court has never really addressed it in detail, but it disrupts that 2014 case, New York Times versus United States DOJ, 756 F3rd 100, and Penn site at 129, note 19, is saying that it's giving an example of states that have broadly provided public authority defenses available when a government officer engages in any reasonable exercise of his official functions. I think even if you're going to look here at the penal law, which I agree with here, there is a broader provision that talks about justification generally that supports the propositions involved in making that it's not limited purely to an arrest context. It's when they're operating in their official functions. Thank you. If there are no other questions from the panel, we will hear rebuttal. Thank you, Your Honor. As to the last point of the defendant, penal law 3505, by the commentary on that law, is chiefly limited to what's called malum prohibitum situations of a public official. As the court held in People versus Madison, 75 AD second 959, regardless of its precise scope, the defense of 3505 would never apply to accusations requiring a particular criminal intent. Because if an intent to steal were established, a public servant would hardly assert that the theft was undertaken as a reasonable exercise of official function. In other words, for example, if a police officer is speeding in order to be able to apprehend an assailant, that would be allowed because that falls in the law. I'm sorry, you have one more minute. Malum prohibitum situation. So 3505 doesn't apply. Beyond that, in terms of the reasonableness standard for the justification defense, the reasonableness standard is reasonableness from the perspective of the justification defense is reasonableness from the perspective of the standpoint of the victim. So New York law in a crowd control situation would allow contact as long as a reasonable ordinary person would not consider that to be an attack on their personal dignity. It would make no sense for this court to hold that there is a greater privilege for law enforcement officers to use force in non-arrest situations than in making unlawful arrests. 3530 specifically only allows a justification defense in situations where there's a lawful arrest. That's what the New York case law is clear on. If this court were to expand the justification defense to non-arrest situations, it would be giving a greater privilege in the non-arrest situation than in the situation of an officer who makes an unlawful arrest. Let me ask you a hypothetical. A high public official is coming out of a building. The comes running, racing toward the entrance where the official is exiting. The police officer believes that the person is approaching the official and restrains him or pushes the person down. The person says, well, look, I wasn't running for the official. I was trying to get a cab. Under your scenario, that goes to a jury. No, your honor. Under my scenario, one of the elements of the tort of battery is that there'd be an offensive contact. The police officer pushed the person down. But that's not necessarily an offensive contact. What you'd have to determine, what the judge on summary judgment would have to decide, is whether or not that contact was one that would offend an ordinary person, not unduly sensitive to his personal dignity. In a situation like that, nearly everyone who was animated enough to bring suit would say, I was just running for a cab. A police officer came over and knocked me down. And then the question of fact, your honor, would be whether or not a reasonable person in that context with the official coming out of the building would consider that to be offensive. And that would be an issue that the judge in the first instance would decide whether or not a reasonably objective victim in a situation like that would consider that to be offensive. The crowd control situation is addressed by the New York battery law. The difference is that under the justification defense, if you look at the objective officer in the state battery context, you look at whether or not it's reasonable from an objective victim that there should be contact in that situation. If there are no other questions, we would request that this court remand the case for a trial on the ADA claim and would remand the case for a new trial on the assault and battery claims against Matera and McManus. I hope everybody is safe. Thank you. Thank you both for your arguments. Very, very helpful in these times. And, and we appreciate your willingness to argue in this format. We will take the matter under advisement. And is that is the only case on the calendar. I'll ask the clerk to adjourn court. Thank you.